# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SKI SHAWNEE, INC.,

    Plaintiff,

v.

COMMONWEALTH INSURANCE COMPANY,

    Defendant.

NO. 3:09-CV-02391

(JUDGE CAPUTO)

## MEMORANDUM

Presently before the Court is Defendant Commonwealth Insurance Company's ("Commonwealth") Motion for Summary Judgment. (Doc. 9.) For the reasons discussed more fully below, Defendant's motion will be granted. This Court has jurisdiction pursuant to 28 U.S.C. § 1332.

## BACKGROUND

On February 8, 2008, a bridge collapsed on Hollow Road in Shawnee-on-Delaware, Pennsylvania. (Doc. 12 at ¶ 7.) Hollow Road is the main route for ingress to the Plaintiff's ski resort and feeds into the southern entrance of the resort. (*Id.*) As a result of the bridge collapse, the Pennsylvania Department of Transportation ("PENN DOT") closed Hollow Road to the public on February 9 and 10, 2008, during which time bridge repairs were completed. (*Id.*) Approximately seventy percent (70%) of Plaintiff's patrons access the resort by Hollow Road. (Doc. 9, Ex. C.)

At the time of this incident Plaintiff Ski Shawnee, Inc. ("Ski Shawnee") had a insurance policy with Commonwealth that included business income loss coverage. This coverage stated that:

> We [Commonwealth] will pay you [Ski Shawnee] for the actual loss of Business Income you sustain due to the necessary "Suspension" of your "Operations" during the "Period of Restriction." The "Suspension" must be caused by direct physical loss of or damage to property at the covered premises at the named locations stated in either Coverage Part II or Coverage Part III Declarations and for which a Business Income Limit of Insurance is shown in the Declarations. [1]

The "Covered Property" under the policy includes Buildings, Business Personal Property (such as furniture and equipment), and Personal Property of Others. The policy also includes coverage for:

> [T]he actual loss of Business Income you [Ski Shawnee] sustain and necessary Extra Expenses you incur caused by action of civil authority that prohibits access to the covered premises at the named locations stated in either the Coverage Part II or Coverage Part III Declarations due to direct physical loss of or damage to property adjacent to the covered premises.

On February 20, 2008, Ski Shawnee filed a claim for loss with its insurance agent/broker The Richardson Group. (Doc. 9, Ex. B.) At some point after receiving notice of Plaintiff's insurance claim, Commonwealth retained McLarens Young International ("MYI") to assist with the investigation as claims adjusters; MYI, in turn, retained Michael A. Castillo, CPA, to assist with the loss of business income claim. (Doc. 12 at ¶ 10.) On February 22, 2008, Mr. Castillo contacted Ski Shawnee requesting information regarding the claim. (Doc. 12 at ¶ 11.) Ski Shawnee sent a letter to Mr. Castillo, on March 4, 2008, enclosing records of income loss and estimating that the business interruption loss totaled $118,500. (Doc. 9, Ex. C.) Mr. Castillo responded on March 18, 2008, seeking more documents of past income, in order to properly calculate the business income lost as a result of the bridge collapse and subsequent closing of Hollow Road. (Doc. 9, Ex. D.)

---

[1] "Suspension" is defined in the policy as "[t]he slowdown or cessation of your business activities."

On March 21, 2008, MYI sent a letter to Ski Shawnee, explaining that "[t]he information thus far provided regarding your loss indicates possible involvement of questions of coverage and/or violations of the terms and conditions of the policy of insurance, which may have a material bearing on the insurer's liability in this matter. In order to fully resolve these questions, an investigation will be undertaken and a final decision by the insurer will be deferred." (Doc. 9, Ex. E.) On April 11, 2008, Castillo sent a letter to Ski Shawnee advising that he had not received the documents requested in the letter of March 18, 2008. (Doc. 9, Ex. G.) On April 17, 2008, Ski Shawnee sent Mr. Castillo a letter stating "[w]e enclose all of the information requested in your letter dated March 18, 2008." (Doc. 21.)

On July 8, 2008, MYI alerted Ski Shawnee that "there is no coverage under this policy of insurance for your loss of income that resulted from the closure of the bridge." (Doc. 9, EX. H.) Counsel for Ski Shawnee sent a letter to MYI on September 25, 2008, stating the "[w]hile some of Shawnee's customers were able to access the ski area by traversing roads that entered the ski area from the north, the northern route was neither the publicized nor generally recognized route of ingress to the ski area." (Doc. 9, Ex. I.) On October 2, 2008, MYI told Ski Shawnee that it had forwarded Ski Shawnee's counsel's letter to Commonwealth and would be providing a formal reply in due course. (Doc. 9, Ex. J.) Counsel for Commonwealth responded to Ski Shawnee on October 29, 2008, reiterating that Commonwealth would not provide coverage under the policy and citing applicable case law. (Doc. 9, Ex. K.) On June 24, 2009, Ski Shawnee's counsel sent a letter to Commonwealth, re-asserting the position that coverage was due under the policy. (Doc. 9, Ex. L.) On July 27, 2009, Commonwealth's counsel again stated that coverage was not owed under the policy. (Doc. 9, Ex. M.)

3

Plaintiff then filed the instant action in the Court of Common Pleas of Monroe County, bringing causes of action for breach of contract (Count I), breach of the Pennsylvania Unfair Insurance Practices Act (Count II), and bad faith pursuant to 42 PA. CONS. STAT. ANN. § 8371 (Count III). Commonwealth removed the case to federal court on December 4, 2009. On April 21, 2010, Commonwealth filed its Motion for Summary Judgment. (Doc. 9.) This motion has been fully briefed and is currently ripe for disposition.

## **LEGAL STANDARD**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2). Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. Anderson, 477 U.S. at 248. An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." Id. Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. See Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2D § 2727 (2d ed. 1983). The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the

4

nonmoving party has failed to make a sufficient showing on an essential element of her case." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988). Once the moving party has satisfied its initial burden, the burden shifts to the non-moving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. Anderson, 477 U.S. at 256-57. The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

## DISCUSSION

**1. COUNT I- Breach of Contract**

The interpretation of an insurance contract is a question of law for the court to decide. *Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 900 (3d Cir. 1997) (citing *Standard Venetian Blind v. Am. Empire Ins. Co.*, 469 A.2d 563, 566 (Pa. 1983)). A court must give effect to the plain language of the insurance contract read in its entirety. *Reliance*, 121 F.3d at 901. When the language of an insurance policy is ambiguous, the provision must be construed in favor of the insured. *Reliance*, 121 F.3d at 900-01 (citing *Standard Venetian Blind Co.*, 469 A.2d at 566). Contract language is ambiguous if it is reasonably susceptible

5

to more than one construction and meaning. *Bowersox v. Progressive Cas. Ins. Co.*, 781 A.2d 1236, 1239 (Pa. Super. 2001) (citing *Hutchinson v. Sunbeam Coal Corp.*, 519 A.2d 385, 390 (Pa. 1985)). However, the language of an insurance policy may not be stretched beyond its plain meaning to create an ambiguity. *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999).

As for the coverage listed under "Business Income," that provision does not apply because the loss at issue due to the "suspension" of Plaintiff's "operations" was not the result of a "direct physical loss of or damage to property at the covered premises." The damage was done to a bridge located on Hollow Road south of the Plaintiff's property. By the plain and unambiguous language of the insurance policy, this coverage does not apply to the case presented here.

The other possibly applicable portion of the policy is the civil authority coverage, which provides that Commonwealth will pay for any loss of business income that is "caused by action of civil authority that prohibits access to the covered premises . . . due to direct physical loss of or damage to property adjacent to the covered premises." Neither party argues that PENN DOT's closing of the bridge on Hollow Road was an action of civil authority. Nor do they argue that there was damage to property adjacent to the covered premises. Instead, this argument centers around whether PENN DOT's actions prohibited access to Plaintiff's premises.

When the action of a civil authority completely shuts down access to a party's premises, federal courts have held that the coverage in insurance policies similar to the one at bar are triggered. *Narricot Industries, Inc. v. Fireman's Fund Ins. Co.*, No. CIV.A.01-4679, 2002 WL 31247972, at *4-5 (E.D. Pa. Sept. 30, 2002). However, where the action of a civil

6

authority merely hinders access to the covered premises, without completely prohibiting access, federal courts have held that such action is not covered under policies like the one in the instant case. *Southern Hospitality, Inc. v. Zurich American Ins. Co.*, 393 F.3d 1137, 1140-41 (10th Cir. 2004); *see also Abner, Herrman & Brock, Inc. v. Great Northern Ins. Co.*, 308 F. Supp.2d 331, 336-37 (S.D.N.Y. 2004).

In *Narricot*, the plaintiff's facilities in North Carolina were located in an area that was ravaged by Hurricane Floyd. *Narricot*, 2002 WL 31247972, at *1. The town in which the facilities were located suspended the operation of all plants, including plaintiff's, and hand-delivered a letter to each plant advising them that must cease operations because the water system was being shut down. *Id.* The United States District Court for the Eastern District of Pennsylvania held there was no genuine issue of fact that the town's initiatives were "actions of civil authority that prohibited access to the described premises." *Id.* at *4 (internal quotations omitted).

In *Southern Hospitality*, plaintiffs managed a number of hotels that were highly dependent on air travel. 393 F.3d at 1138. Following the attacks of September 11, 2001, the Federal Aviation Administration ("FAA") cancelled numerous flights and many airports were closed, causing plaintiffs' profits to decline sharply. *Id.* The Tenth Circuit Court of Appeals held that the civil authority coverage was not triggered, reasoning that access to plaintiffs' hotels had not been prohibited, but only hindered, because the FAA did not close the hotels and they could still be accessed by other modes of transportation. *Id.* at 1140-41. Other courts presented with a similar scenario have held the same. *See Abner, Herrman & Brock, Inc.*, 308 F. Supp.2d at 336-37; *see also Bienville Partners Ltd. v. Assurance Company of*

*America*, No. Civ.A. 02-106, 2002 WL 31996014, at *1 (E.D. La. Sept. 30, 2002).

This case is more like the line of cases presented by *Southern Hospitality* than *Narricot*. There is no genuine issue of material fact that at least some of Ski Shawnee's customers were able to access the ski resort via alternate routes on the dates in question. Even though some of the customers, even the majority of the customers, were hindered or dissuaded from frequenting Plaintiff's resort on the weekend that the bridge was being repaired, that does not mean that they were *prohibited* from accessing the premises. Without a complete inability to access the premises, or a forced closing by a civil authority, the coverage at issue here is not applicable. Thus, coverage was not available in this instance and summary judgment will be granted in favor of Defendant on this count.

2. **COUNT II- Unfair Insurance Practices Act**

Plaintiff's second claim is brought pursuant to various provisions of the Pennsylvania Unfair Insurance Practice Act ("UIPA"), 40 PA. CONS. STAT. ANN. §1171.1-1171.15, and the Unfair Claims Settlement Practices regulations ("UCSP"), 31 Pa. Code § 146.1-146.10. However, "[t]he UIPA does not create a private cause of action for citizens." *Oehlmann v. Metropolitan Life Ins. Co.*, 644 F. Supp.2d 521, 531 (M.D. Pa. 2007). Instead, "the UIPA and the UCSP are designed to be implemented and enforced by the Insurance Commissioner of Pennsylvania." *Id.* As such, Plaintiff, as a private citizen, cannot maintain a claim against Defendant on these statutory and regulatory sections, and Defendant's motion will be granted on this count as well.

3. **COUNT III- Bad Faith**

Finally, Plaintiff brings a claim for bad faith pursuant to 42 PA. CONS. STAT. ANN. §

8371. To succeed on its bad faith claim, Ski Shawnee must prove that 1) the insurer did not have a reasonable basis for denying benefits under the policy, and 2) the insurer knew of or reckless disregarded its lack of a reasonable basis in denying the claim. *Oehlmann*, 644 F. Supp.2d at 528 (citing *Northwestern Mutual Life Ins. Co. V. Babayan*, 430 F.3d 121, 137 (3d Cir. 2005)). "If there is a reasonable basis for denying resolution of a claim, even if it is clear that the insurer did not rely on that reason, there cannot, as a matter of law, be bad faith." *Williams v. Hartford Cas. Ins. Co.*, 83 F.Supp.2d 567, 574 (E.D. Pa.2000).

There is no genuine issue of material fact that Defendant had a reasonable basis for denying the resolution of the claim at bar. In fact, this Court has already decided the policy did not include coverage for the loss of profits resulting from the closing of Hollow Road. It was reasonable for Commonwealth to believe that coverage should be denied when there was no direct property damage on the premises, nor was there action by a civil authority prohibiting access to the premises. As such, Plaintiff cannot prove the first prong of the test for bad faith under Pennsylvania law. Therefore, summary judgment will be granted on this claim.

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted. An appropriate Order follows.

 7/6/2010  /s/ A. Richard Caputo  
Date A. Richard Caputo  
United States District Judge

9

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SKI SHAWNEE, INC., | |
| Plaintiff, | NO. 3:09-CV-02391 |
| v. | (JUDGE CAPUTO) |
| COMMONWEALTH INSURANCE COMPANY, | |
| Defendant. | |

## ORDER

**NOW**, this  6th day of July 2010, **IT IS HEREBY ORDERED** that:

(1) Defendant's Motion for Summary Judgment (Doc. 9) is **GRANTED**.

(2) **JUDGMENT IS ENTERED** in favor of Defendants.

(3) The Clerk of Court shall mark this case as **CLOSED**.

                                                                  /s/ A. Richard Caputo
                                                                  A. Richard Caputo
                                                                  United States District Judge